IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BLAKE WILSON,** **#M49014,** <br><br>     Plaintiff, <br><br>v. <br><br>**WARDEN WILLS,** **LEWEY,** **LT. ROYSTER,** **SGT. MURPHY,** **A. SMITH,** **J. SMITH,** **ROB,** **BENNETT,** **LT. SCHOEBECK,** **SGT. LEPOSKY,** **LIGHTFOOT,** **JOHN DOE 1,** **JOHN DOE 2,** **JOHN DOE 3,** **JOHN DOE 4, and** **JOHN DOE 5,** <br><br>     Defendants. | Case No. 23-cv-04066-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  Plaintiff Blake Wilson, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief

must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff alleges that on June 13, 2023, some inmates in the East Housing Unit at Menard Correctional Center (Menard) began throwing feces and urine and burning clothing in response to the water being shut off to the cells. (Doc. 1, p. 2). The tactical team came to Plaintiff's cell, wrongfully believing that he had participated in starting fires, and they sprayed mace at Plaintiff and his cellmate. Plaintiff was placed in handcuffs and forced to the ground. The officers, including Correctional Officer Lewey, then beat him. During the assault, Lewey fractured his hand. Lewey falsely claimed that Plaintiff caused the fracture by striking Lewey with a property box. Plaintiff asserts that Lewey did not press criminal charges against him in order to prevent Plaintiff from proving in state court that Lewey incurred the fracture by punching him. (*Id.*). Because of Lewey's falsified statement and disciplinary report regarding hand injury and a false disciplinary report issued by Lieutenant Royster, Plaintiff was sentenced to 1 year and 28 days in segregation. (Doc. 1, p. 2).

On September 16, 2023, while in segregation, Plaintiff splashed a rival gang member with spoiled milk and the milk splashed on Correctional Officer A. Smith, who was the shower escort. (Doc. 1, p. 3). Correctional Officers Rob and John Doe 1[1] took Plaintiff to see a nurse and told Plaintiff to tell her he was fine. After doing so, Plaintiff was beaten by Correctional Officers Rob, John Doe 1, Bennett, Lightfoot, and Sergeant Leposky. The officers choked, punched, hit, and

---

[1] In the "Facts" section of the Complaint, Plaintiff asserts allegations against two John Does: "C/O John Doe" and "Lt. John Doe." (Doc. 1, p. 3). For clarity, the Court will refer to "C/O John Doe" as John Doe 1 and "Lt. John Doe" as John Doe 2.

kneed Plaintiff. He was hit on the back with a clipboard and dragged off the ground by his hair. After the incident, Lieutenant John Doe 2 falsified a mental health form in order to have Plaintiff placed in watch cell 5-04, where he knew Plaintiff would endure unconstitutional conditions until September 30, 2023. Plaintiff alleges that for a number of days he was without running water, a mattress, and food. He was harassed by Lewey, and when A. Smith was working, Plaintiff was not allowed to shower. Bennett would delay Plaintiff's mail, and Correctional Officer J. Smith gave Plaintiff a food tray that was contaminated with a mucus like substance. (*Id.*).

## PRELIMINARY DISMISSAL

The Court dismisses any claims brought against "Tact Team John Does." While Plaintiff's allegations that members of the tactical team physically assaulted him on June 13, 2023, could state a claim for excessive force, his assertions against the "tact team" are too vague to state a claim. (Doc. 1, p. 2). Plaintiff may bring claims against unknown defendants, but he must identify the John Does with some specificity ("John Doe #1 did X, John Doe #2 did Y, etc."). His referral to the tactical team officers is too generic and does not even provide notice as to the number of officers that were present during the incident. Accordingly, the claims against Tactical Team John Does are dismissed without prejudice. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement).

The Court also dismisses Plaintiffs claim of retaliation against J. Smith. (Doc. 1, p. 3). Prison officials are prohibited from retaliating against inmates for exercising their First Amendment rights by filing grievances to complain about the conditions of their confinement. *Manuel v. Nalley,* 966 F.3d 678, 680 (7th Cir. 2020). A plaintiff asserting a retaliation claim must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a

deprivation likely to deter future First Amendment activity; and (3) his protected activity was "at least a motivating factor" in the defendant's decision to take retaliatory action against him. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Here, Plaintiff's claim that J. Smith retaliated against him by contaminating his food and not providing him a kosher meal is conclusory and not supported by any factual allegations. Notably, Plaintiff does not allege that J. Smith was motivated by any First Amendment protected activity. Accordingly, his retaliation claim is dismissed without prejudice.

Likewise, the Court dismisses any claims brought for equal protection violations. (Doc. 1, p. 4). To state an equal protection claim, a plaintiff must allege that he was treated differently from others based on membership in a suspect class (such as race, gender, alien status, or national origin) or based upon the denial of a fundamental right (freedom of speech or religion). *See, e.g., Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009). Here, Plaintiff does not allege facts to support an equal protection violation against any defendant. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (conclusory legal statements are not sufficient to state a claim). He simply states that his right to equal protection under the law was violated.

Finally, the Court dismisses all constitutional claims against Wills, Murphy, John Doe 3, John Doe 4, and John Doe 5, as there are no allegations against these individuals in the statement of claim.

### DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** Eighth Amendment claim against Correctional Officer Lewey for the use of excessive force against Plaintiff on June 13, 2023.

| | |
|---|---|
| **Count 2:** | Fourteenth Amendment claim against Lewey, Royster, and Schoebeck for denial of due process in connection with the issuance of false disciplinary reports and subsequent disciplinary hearing. |
| **Count 3:** | Eighth Amendment claim against Bennett, Lightfoot, Rob, John Doe 1, and Leposky for the use of excessive force against Plaintiff on September 16, 2023. |
| **Count 4:** | Eighth Amendment claim against John Doe 2, Lewey, A. Smith, and J. Smith for subjecting Plaintiff to cruel and unusual punishment. |
| **Count 5:** | First Amendment claim against Bennett for repeatedly delaying Plaintiff's mail while he was housed in cell 2-44. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

Plaintiff has sufficiently stated a claim of excessive force against Lewey. *See Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (the core requirement for [an excessive force claim] is that [the defendant] used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm") (citations omitted).

### Count 2

The Fourteenth Amendment provides that "[n]o State shall…deprive any person of life, liberty, or property, without due process of law." U.S. CONST., amend. XIV, § 1. To pursue a due process claim in the prison discipline context, an inmate must show that he possessed a protected liberty or property interest and was deprived of that interest without due process. *Zinermon v. Burch*, 494 U.S. 113 U.S. 125 (1990); *Westefer v. Snyder*, 422 F.3d 570, 585-86 (7th Cir. 2005).

---

[2] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Plaintiff claims that based on false disciplinary reports issued by Lewey and Royster he was sentenced by Schoebeck to 1 year and 28 days in segregation, he was demoted to C-grade status, and his phone and visitation privileges were restricted.

Standing alone, a false disciplinary ticket does not give rise to a claim for a due process violation because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), aff'd, 70 F.3d 117 (7thCir. 1995). These due process safeguards include advance written notice of the charges, the right to appear before an impartial hearing body and contest the charges, the right to call witnesses and present evidence, and a written statement summarizing the reasons for the discipline imposed. *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). Additionally, the hearing committee's decision must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994). Other than Plaintiff claiming that the disciplinary reports were invalid, he does not challenge any aspect of or provide any factual details regarding the disciplinary hearing itself. Because Plaintiff does not assert that he was denied procedural protections necessary for a constitutional disciplinary hearing, he has failed to state a due process claim under the Fourteenth Amendment. Count 2 is dismissed.

**Count 3**

Count 3 will proceed against Bennett, Lightfoot, Rob, John Doe 1, and Leposky for the use of excessive force against Plaintiff on September 16, 2023.

**Count 4**

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime.

*Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842.

Plaintiff claims that John Doe 2 intentionally falsified a mental health form so that Plaintiff would be placed in conditions where he would be "tortured." (Doc. 1, p. 3). Specifically, for fourteen days, he was denied running water, not provided a mattress, and denied food. This is sufficient for Count 4 to proceed against John Doe 2 for cruel and unusual punishment.

Count 4, however, is dismissed as to Lewey. Plaintiff states that he was "harassed by C/O Lewey," but does not provide any further factual allegations regarding the alleged harassment. (Doc. 1, p. 3). Not all harassment rises to the level of an Eighth Amendment violation. *See Lisle v. Welborn,* 933 F. 3d 705, 719 (7th Cir. 2019); *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009) ("harassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment"). Because of the lack of details, the Court cannot plausibly infer that Lewey engaged in conduct that violated the constitution during his interactions with Plaintiff while Plaintiff was in segregation in the fall of 2023.

Likewise, Count 4 is dismissed as to A. Smith. Plaintiff states that when A. Smith was working, A. Smith would not allow him to shower and would harass him. (Doc. 1, p. 3). These assertions, again, are too vague to survive preliminary review. It is unclear how often Plaintiff was

denied the ability to shower and the type of conduct that A. Smith engaged in that Plaintiff labels "harassing." *See Johnson v. Godinez,* 2016 WL 6070175, at *2 (N.D. Ill. Oct. 17, 206) ("a temporary deprivation of some necessities is not an automatic Eight Amendment violation) (citations omitted). Because Plaintiff has not included sufficient facts to allow for a reasonable inference that A. Smith is liable for depriving Plaintiff of his constitutional right to be free of cruel and unusual punishment, Count 2 is dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Count 4 will proceed against J. Smith for intentionally contaminating Plaintiff's kosher breakfast tray on November 13, 2023. (Doc. 1, p. 3).

## Count 5

Plaintiff has stated a claim against Bennett for repeated occurrences of delaying his mail while he was housed in cell 2-44. *See Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir. 1999); *Zimmerman v. Tribble,* 226 F.3d 568, 572 (7th Cir. 2002).

### OFFICIAL CAPACITY CLAIMS AND IDENTIFYING THE UNKNOWN DEFENDANTS

Plaintiff will be allowed to proceed with Count 3 against John Doe 1 and Count 4 against John Doe 2, but these defendants must be identified by first and last names before service of the Complaint can be made on them. Plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of John Does. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Warden Wills will remain a defendant in his official capacity only for the purposes of responding to discovery aimed at identifying the unknown defendants and implementing any injunctive relief that may be ordered. Once the Warden has entered an appearance, the Court will provide further instructions and deadlines for identifying the John Does. Plaintiff is advised that it is ultimately his responsibility to identify the John Does.

Because Warden Wills is party in his official capacity for the purposes of implementing

injunctive relief, Plaintiff's official capacity claims against the remaining Defendants are dismissed as redundant. *See generally Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (the acting warden is the most appropriate official capacity defendant); *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) (state officials named in their official capacities may not be sued for monetary damages).

## TEMPORARY RESTRAINING ORDER

In the Complaint, Plaintiff requests a temporary restraining order (TRO) "from the offending staff/correctional officers." (Doc. 13, p. 8).

The Court will not issue a TRO unless "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *See* FED. R. CIV. P. 65(b)(1)(A). Here, it is not exactly clear what conduct on the part of Defendants Plaintiff is seeking to prevent or enjoin, and Plaintiff's Complaint fails to include any recognizable allegations that he is facing an immediate and irreparable injury, loss, or damage if the Court does not issue a TRO. Accordingly, the request for a TRO is **DENIED**.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Lewey. **COUNT 2** is **DISMISSED without prejudice. COUNT 3** will proceed against Bennett, Lightfoot, Rob, John Doe 1, and Leposky. **COUNT 4** will proceed against John Doe 2 and J. Smith but is **DISMISSED without prejudice** as to A. Smith. **COUNT 5** will proceed against Bennett. Plaintiff's claims for injunctive relief will proceed against Warden Wills in his official capacity. All claims against Murphy, Royster, Schoebeck, A. Smith, John Doe 3, John Doe 4, John Doe 5, and Tact Team John Does are

dismissed without prejudice, and the Clerk of Court is **DIRECTED** to terminate them as defendants on the docket.

Because Plaintiff claims involve physical injury, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Wills (official capacity), Lewey, Rob, Bennett, Leposky, Lightfoot, John Does 1 and 2 (once identified), and J. Smith the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint and this Memorandum and Order to the defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his or her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this**

Merit Review Order.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 10, 2024**

 *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.